R. Kyle Busse, OSB No. 070994
kbusse@busseandhunt.com
BUSSE & HUNT
621 S.W. Morrison St., Ste. 521
Portland, OR 97205
Tel    : (503) 248-0504
Fax   : (503) 248-2131

Roxanne L. Farra, OSB No. 901760
rfarra@bendbroadband.com
ROXANNE L. FARRA, P.C.
P.O. Box 5217
Bend, OR 97708-5217
Tel    : (541) 385-3017
Fax   : (541) 330-1556

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **JUSTIN J. BAKER**, | Case No. 6:16-cv-01793-AA |
| Plaintiff, | |
| v. | **DEFENDANT SCOTT N. MARICLE'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF** |
| **MARICLE INDUSTRIES, INC., dba SERVICEMASTER CLEANING SPECIALISTS,** and **SCOTT N. MARICLE**, | |
| Defendants. | |

### L.R. 7-1 CERTIFICATION

Pursuant to L.R. 7-1, counsel for Defendant Scott N. Maricle ("Maricle"), Roxanne Farra, certifies that she made a good faith effort through personal or telephone conferences with Plaintiff's counsel, Michael J. Ross, to resolve the dispute embodied in this motion, and the parties were unable resolve the dispute.

PAGE 1 -    **DEFENDANT SCOTT N. MARICLE'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708-5217
TEL (541) 385-3017 FAX (541) 330-1556

V:\My Documents\Clients\ServiceMaster\Justin Baker\Pleadings\Motion re Summary Judgment.pd.wpd

**MOTION**

Pursuant to Rule 56, Defendant Maricle moves for summary judgment in his favor on Plaintiff's ORS 659A.030(1)(g) claim for aiding and abetting; the only claim alleged against Maricle in the Complaint.

**MEMORANDUM**

**I.   FACTS**

The facts, for purposes of this motion, are simple:

Plaintiff was employed by Defendant Maricle Industries, Inc. ("Maricle Industries"). Compl. At 2, ¶3; Exhibit 1 to Declaration of Roxanne L. Farra ("Farra Decl."), Plaintiff's Sworn BOLI Compl. at 1, ¶1. Maricle is an officer (President) of Maricle Industries. Compl. at 2, ¶3; Ans. at 2, ¶3. Plaintiff alleges he has PTSD. Compl. at 2, ¶4. Plaintiff claims that "[o]n or about October 24, 2014, while at work, I overheard Scott Maricle and a project manager talking about me and my PTSD in an offensive manner." Farra Decl., Ex. 1 at 1, ¶4; Compl. at 2, ¶5. Plaintiff subsequently "complained to Maricle about the derogatory comments regarding his PTSD." Compl. at 2, ¶5; Farra Decl., Ex. 1 at 1, ¶4. In response, according to Plaintiff, Maricle "questioned the legitimacy" of Plaintiff's "PTSD," "made disparaging remarks about his PTSD, and terminated" Plaintiff. Compl. at 2-3, ¶5; Farra Decl., Ex. 1 at 1, ¶4.

**II.   DISCUSSION**

    **A.   Plaintiff's Aiding and Abetting Claim is Time-Barred**

An employee who chooses to file a complaint with the Oregon Bureau of Labor and Industries ("BOLI") before initiating a civil suit must file his BOLI complaint "no later than one year after the alleged unlawful practice." ORS 659A.820(2). The complaint must "state[] the name and address of the person alleged to have committed the unlawful practice." Id. Here, as initially filed, Plaintiff's BOLI complaint alleged a violation of ORS 659A.112, only, against a single

PAGE 2 -   **DEFENDANT SCOTT N. MARICLE'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF**

respondent: Maricle Industries. Farra Decl., Ex. 1. On or about April 7, 2016, Plaintiff purported to file an "amended complaint" with BOLI, adding Maricle, individually, as a respondent on an aiding and abetting claim under ORS 659A.030(1)(g). Farra Decl., Exhibit 2. The "amended" complaint is undated, and unsigned. Id.; ORS 659A.820(2) (BOLI complaints must be signed under oath by the complainant.)

Plaintiff's initial BOLI complaint makes clear that his claimed discrimination occurred on October 24, 2014. Plaintiff's initial BOLI complaint named one respondent only: Maricle Industries. It was not until one year and 5+ months "after the alleged unlawful practice," ORS 659A.820(2), that Plaintiff first attempted to file a claim against Maricle, individually. Plaintiff's claim against Maricle is based on a different statute, ORS 659A.030(1)(g). Any claim against Maricle brought under this statute was required to be filed no later than one year from the date of the alleged discriminatory act; here, October 24, 2015. ORS 659A.820(2); ORS 659A.875(1). Plaintiff's ORS 659A.030(1)(g) claim against Maricle is 5+ months late. The claim is time-barred and for that reason alone should be dismissed.

### B. No Aiding and Abetting Liability Against Principal Actor

In <u>Peters v. Betaseed, Inc.</u>, 2012 U.S. Dist. LEXIS 162443 (D. Or. 2012) (**Exhibit 1**), this Court dismissed the plaintiff's aiding and abetting claim against the principal actor under ORS 659A.030(1)(g). Peters sued both his employer (Betaseed) for an alleged violation of ORS 659A.199, and Betaseed's "Chief Executive Officer" (Wickstrom) for aiding and abetting this alleged violation, under ORS 659A.030(1)(g). In dismissing the plaintiff's aiding and abetting claim, this Court wrote:

> Wickstrom was both plaintiff's manager and the executive authority of Betaseed ... Because Wickstrom took action to terminate the plaintiff within his role as president of Betaseed, I find that plaintiff's claim against Wickstrom for aiding and abetting under §659A.030(1)(g) makes little sense under the plain meaning of the statute. Accordingly, summary judment is granted in favor of defendants as to plaintiff's claim for aiding and abetting under Or. Rev. Stat. §659A.030(1)(g).

<u>See</u> <u>also</u>:

PAGE 3 -  **DEFENDANT SCOTT N. MARICLE'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF**

Sniadoski v. Unimart of Portland, Inc., 1993 U.S. Dist. LEXIS 21165 (D. Or. 1993) ("aiding and abetting liability makes little sense against an employee alleged to be an active participant in the asserted harm");

Gaither v. John Q. Hammons Hotels Mgmt., LLC, 2009 U.S. Dist. LEXIS 130491, *9 (D. Or. 2009) ("there are undoubtedly situations in which a plaintiff fails to allege aiding and abetting liability against a co-employee, alleging instead only liability as a primary actor, and making Sniadoski's concern that you cannot aid and abet yourself relevant");

White v. Amedisys Holding, LLC, 2012 U.S. Dist. LEXIS 185837, *13 (D. Or. 2012) ("a person cannot aid and abet herself");

Hannan v. Bus. Journal Publ'ns, Inc., 2015 U.S. Dist. LEXIS 160192, *58 (D. Or. 2015) ("Wessel cannot be liable for aiding and abetting age discrimination where he was the primary actor in Hannan's termination") (Beckerman, M.J.), adopted Opinion and Order (November 30, 2015) (Simon, J.).

Here, as in Betaseed, Plaintiff sued both his employer (Maricle Industries) for an alleged violation of Oregon's anti-discrimination statutes, and Maricle Industries' officer (Maricle) for aiding and abetting this alleged violation. Plaintiff's sworn statement in his initial BOLI complaint, and his statement in his Complaint filed herein, is that Maricle took action to terminate Plaintiff within his role as President of Maricle Industries. Under these circumstances, Betaseed, Sniadoski, Gaither, White, and Hannan call for the dismissal of Plaintiff's aiding and abetting claim against Maricle, as a matter of law.

For this, additional reason, Plaintiff's ORS 659A.030(1)(g) claim must be dismissed.

### III. CONCLUSION

For the reasons, and in accordance with the authorities listed above, Plaintiff's ORS 659A.030(1)(g) aiding and abetting claim against Maricle should be dismissed, with prejudice. This

/ / / / /

/ / / / /

/ / / / /

/ / / / /

PAGE 4 -    **DEFENDANT SCOTT N. MARICLE'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF**

is the only claim against Maricle and, as such, judgment should be entered dismissing Maricle from this action.

DATED: December 1, 2016.

    /s/ *Roxanne L. Farra*
Roxanne L. Farra, OSB No. 901760
ROXANNE L. FARRA, P.C.
P.O. Box 5217
Bend, OR 97708-5217
rfarra@bendbroadband.com
Tel.    (541) 385-3017

and

R. Kyle Busse, OSB No. 070994
BUSSE & HUNT
621 S.W. Morrison St., Ste. 521
Portland, OR 97205
kbusse@busseandhunt.com
Tel.    (503) 248-0504

Attorneys for Defendants

PAGE 5 -    **DEFENDANT SCOTT N. MARICLE'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708-5217
TEL (541) 385-3017 FAX (541) 330-1556

V:\My Documents\Clients\ServiceMaster\Justin Baker\Pleadings\Motion re Summary Judgment.pd.wpd

# *Peters v. Betaseed, Inc.*

United States District Court for the District of Oregon

November 9, 2012, Decided; November 9, 2012, Filed

Case No. 6:11-CV-06308-AA

**Reporter**
2012 U.S. Dist. LEXIS 162443 *; 2012 WL 5503617

BRUCE PETERS, Plaintiff, v. BETASEED, INC. a foreign business corporation, and Kurt Wickstrom, Defendants.

## Core Terms

termination, retaliation, labeling, practices, seed, aiding and abetting, summary judgment, complaints, protected activity, prima facie case, employees, employment action, plaintiff's claim, non-discriminatory, defendants', genuine, email, material fact, causal link, substitution, deposition, believes, meetings, Plant, fails

**Counsel:** [*1] For Plaintiff: Pamela S. Hediger, Laurie J. Hart, Evashevski, Elliott, Cihak & Hediger, PC, Corvallis, OR.

For Defendants: Jennifer A. Nelson, Littler Mendelson, PC, Portland, OR.

**Judges:** Ann Aiken, United States District Judge.

**Opinion by:** Ann Aiken

## Opinion

OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Bruce Peters filed this action against Betaseed, Inc. and its president, Kurt Wickstrom, alleging whistleblower retaliation against Betaseed in violation of *Or. Rev. Stat. § 659A.199*, and aiding and abetting liability against Wickstrom in violation of *Or. Rev. Stat. § 659A.030(1)(g)*. Defendants now move for summary judgment on both claims. On October 11, 2012, the court heard oral argument on the motion. Defendants' motion is denied in part and granted in part.

## I. FACTUAL BACKGROUND

Betaseed is a supplier of sugar beet seeds to North American growers. In 1987 or 1989, plaintiff was hired as Plant Manager for Betaseed's facility in Tangent, Oregon. All seed harvested for commercial use is processed, packaged, and shipped from the Tangent facility. Plaintiff was eventually promoted to Director of Operations for the Tangent facility, by then-president Joe Dahmer. As Director of Operations, plaintiff was responsible for [*2] all aspects of pre-commercial and commercial seed production, and all management responsibilities related to personnel and operations at Tangent. All employees there ultimately reported to plaintiff.

Before being purchased by customers, seeds produced by Betaseed are first field-tested. Customers base their purchasing decisions on the results of these field tests. According to defendants, customer orders for particular seed varietals cannot always be filled, and Betaseed may substitute other seeds if appropriate. Betaseed employs seed breeders whose duties include determining which, if any, seeds may be suitable for substitution. These substituted seeds often share a common parent and are selected due to similar characteristics with the seed being replaced. This substitution practice was

in place at Betaseed as early as 2006. Betaseed relied on their breeders to determine if the substituted seed was of equal or better field performance, and defendants contend there were no customer complaints regarding the practice.

In July 2009, Kurt Wickstrom became president of Betaseed and brought with him a new management style. Plaintiff admits that, initially, he was not fully on board with some [*3] of Wickstrom's changes, such as the implementation of strategic planning meetings, believing that they were too costly and not worthwhile. Plaintiff came to recognize Wickstrom's changes as beneficial, and believes he initially misunderstood Wickstrom's goals for Betaseed.

Plaintiff asserts that he voiced concerns about Betaseed's labeling practices to various Betaseed employees on multiple occasions, from 2005 up until his termination. These employees included plaintiff's subordinates who were responsible for blending and labeling the seed, members of Betaseed's leadership and strategic teams, human resources directors, and Wickstrom himself. Plaintiff specifically recalls approximately fifty discussions with Jay Miller (Director of Plant Breeding, Product Management, and Regulatory Affairs), ten with John Enright (CFO), twenty with Mark Schmidt (Director of Sales and Marketing), one-hundred and fifty with Heather Nunn, as well as an unspecified number of discussions with Art Quinn, Steve Libsack, and Joe Dahmer. Pl.'s Decl. ¶ 9.

Plaintiff recalls communicating twice with Wickstrom about his concerns. The first conversation with Wickstrom occurred in 2008, at which point plaintiff told [*4] Wickstrom that he believed Betaseed's labeling practices were illegal and immoral. Plaintiff states that Wickstrom dismissed his concerns and advised plaintiff that nobody would be going to jail. The second communication with Wickstrom occurred in 2009, when plaintiff suggested via email that Betaseed would sell more seed in the long run if the contents of every package matched the label. Plaintiff made no comment at this time about the legality or morality of Betaseed's labeling practices.

Plaintiff received a call from Wickstrom shortly thereafter, indicating that they could discuss plaintiff's concerns during Wickstrom's upcoming visit to the Tangent facility. When Wickstrom arrived, plaintiff states that Wickstrom pointed his finger at plaintiff and told plaintiff that he needed to decide whether he was with Wickstrom or against him, or something to that effect. Plaintiff recalls that Wickstrom then left and that they never again spoke of the seed labeling issue. Plaintiff did not tell anyone about this encounter, and he made no further reports to anyone in a supervisory role about Betaseed's labeling practices.

Subsequent to this conversation with Wickstrom, plaintiff received positive [*5] performance reviews for the 2008-2009 period, and received improved reviews during the 2009-2010 period. Plaintiff believes that these evaluations were fair.

In the spring of 2011, Ofelia Wegley, Human Resources Director at Betaseed, received complaints regarding an employee issue at the Tangent facility and plaintiff's method of dealing with it. Two employees, Mike Leach and Brian Baldwin, complained that plaintiff had allowed a third employee, Jesus Ibarra, to falsify time cards.[1] Leach and Baldwin further alleged that plaintiff generally displayed favoritism towards Ibarra while ignoring complaints about his behavior. Baldwin also complained that plaintiff tended to ignore other supervisors' concerns and generally displayed poor leadership. Wegley's investigation substantiated these complaints overall, and both plaintiff and

---

[1] With respect to this evidence, plaintiff filed a motion to strike three portions of Wickstrom's declaration on the basis that they contain inadmissable hearsay, were not based on Wickstrom's personal knowledge, and offered a legal opinion about an ultimate legal fact. See Wickstrom Decl. ¶¶ 6, 9, 13. While plaintiff correctly [*6] notes that a trial court may not consider inadmissable evidence in ruling on a motion for summary judgment, none of the statements that plaintiff moved to strike are dispositive in this analysis, and I deny the motion as moot.

Ibarra were reprimanded as a result.

As a result of these complaints and Wickstrom's own personal observations of plaintiff, Wickstrom states that he reviewed plaintiff's email account. Wickstrom found emails sent by plaintiff that he felt reflected a lack of support in the new direction of Betaseed, a refusal to accept both a team-based culture and responsibility for important issues, a lack of transparency in sharing important information with colleagues and subordinates, and inappropriate dissemination of confidential information to subordinates.

On May 2, 2011, Wickstrom terminated plaintiff's employment with Betaseed, citing the complaints against him and Wickstrom's assessment of the contents of his email.

On August 29, 2011, plaintiff filed this action. Plaintiff believes that Wickstrom's explanation is pretextual, and that he was instead terminated for speaking out against Betaseed's labeling practices, which he believed to be illegal under federal law.

## II. STANDARD

Summary judgment is appropriate [*7] "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. [*8] T.W. Elec., 809 F.2d at 630.

## III. DISCUSSION

Plaintiff alleges that Betaseed terminated his employment in retaliation for his statements regarding Betaseed's labeling practices, in violation of Oregon's whistleblower protection statute. Or. Rev. Stat. § 659A.199(1). Plaintiff alleges that Betaseed retaliated against him because he voiced his concern that Betaseed's labeling practices were illegal under federal law. Plaintiff also alleges that Wickstrom personally violated Or. Rev. Stat. § 659A.030(1)(g) by aiding and abetting Betaseed's retaliation against him.

### A. Betaseed's Alleged Retaliatory Termination

Oregon's whistleblower protection statute makes it unlawful for a private employer to "discriminate or retaliate against an employee . . . for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." Or. Rev. Stat. § 659A.199(1). Claims of discrimination under Oregon law before federal courts sitting in diversity are analyzed under the federal burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Texas Dep't of Cnty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). [*9] Under this analysis, plaintiff must first make a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. If plaintiff successfully makes a prima facie case of discrimination, the burden then shifts to

defendants to provide a legitimate, non-discriminatory reason for the employment action. Id. The then burden shifts back to plaintiff to show that defendants' proffered explanation is pretext.[2] *Id. at 804*.

Defendants argue that plaintiff's claim must fail because he cannot establish a prima facie case of retaliation, and even if he could, Betaseed had a legitimate and nondiscriminatory basis [*10] for terminating plaintiff. Defendants also assert that plaintiff's aiding and abetting claim again Wickstrom must fail if his retaliation claim against Betaseed fails.

1. Plaintiff's Prima Facie Case of Retaliation

To show a prima facie case of retaliation, plaintiff must prove three elements: 1) he engaged in a protected activity; 2) he suffered an adverse employment action; and 3) a causal link between the protected activity and adverse action. *Ruggles v. Cal. Polytechnic State Univ., 797 F.2d 782, 785 (9th Cir. 1986)*. Defendants concede that plaintiff suffered an adverse employment action, but they argue that plaintiff cannot satisfy the protected activity or causal link elements of the prima facie case.

**a. Plaintiff's Engagement in Protected Activity**

Defendants contend that, to show that he was engaged in a protected activity, plaintiff must offer evidence of his good faith belief that Betaseed's labeling practices were in violation of applicable law. *Javansalehi v. BF & Assocs., Inc., 2011 U.S. Dist. LEXIS 126370, 2011 WL 5239752, at *9 (D. Or. Nov. 1, 2011)*. Defendants argue that plaintiff fails to do so. In support of this argument, defendants cite plaintiff's deposition, wherein he admitted that while he thought [*11] the labeling practices were illegal, his only basis for such a belief was a grass-seed labeling class he attended at Oregon State University 25 years prior. Peters Dep. 202:1-25; 203:1-11. Defendants further note that plaintiff admitted to not knowing whether Betaseed's practices were actually illegal. Peters Dep. 203:16-20. Defendants also emphasis that plaintiff never reported Betaseed's labeling practices to anyone outside of the company, and was himself ultimately responsible for seed quality, packaging, and labeling.

However, plaintiff need not be objectively correct about the existence of a statutory violation in order to sufficiently state a prima facie claim of retaliation. *Krouse v. Ply Gem Pacific Windows Corp., 803 F. Supp. 2d 1220, 1228 (D. Or. 2011)* (finding plaintiff must only have believed that the subject of the complaint violated applicable law). Further, plaintiff testified in his deposition that Jay Miller, the "product manager," was in a position to know whether Betaseed's practices were illegal and admitted to plaintiff that they were. Peters Dep. 79:2-16. By plaintiff's own declaration, he was concerned that Betaseed may suffer as the result of its labeling actions, [*12] including fines and plant closures. Peters Decl. ¶ 9. Construing these facts in favor of plaintiff, the evidence does not support defendants' assertion that plaintiff lacked a good faith belief that Betaseed's labeling practices were illegal.

In the alternative, defendants argue that plaintiff must present evidence that he complained to a supervisor who had no previous knowledge of the alleged illegal activity and was not the alleged wrongdoer. *Franklin v. Clarke, 2011 U.S. Dist. LEXIS 102231, 2011 WL 4024638, at *9 (D. Or. Sept. 9, 2011)* (citing *Clarke v. Multnomah Cnty., 2007 U.S. Dist. LEXIS 21427, 2007 WL 915175, at *14 (D. Or. Mar. 23, 2007))*. This argument is misplaced. In both *Franklin* and *Clarke*, this Court

---

[2] State courts in Oregon do not observe the third prong of the McDonnell Douglas analysis. See, e.g., *Lansford v. Georgetown Manor, 192 Or. App. 261, 277, 84 P.3d 1105, 1115 (2004)*. However, the Ninth Circuit has held that federal procedural law governs in Oregon employment discrimination cases before federal courts sitting in diversity, stating that the Oregon rule is not outcome determinative and that there is an overriding federal interest in applying the McDonnell Douglas burden-shifting standard. *Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090-91 (9th Cir. 2001)*.

considered claims of retaliation under Or. Rev. Stat. § 659A.203, which applies to public employers. Betaseed is a private employer, and plaintiff's claim against Betaseed was brought under § 659A.199. Neither Franklin nor the plain language of §659A.199 require that the recipient of the report be a supervisor with no prior involvement in or knowledge of the alleged illegal activity. Indeed, in Franklin, this Court reiterated its prior conclusion that § 659A.199 "protects employees who make an external or internal report that is [*13] intended or likely to result in the employer's enforcement or compliance with state and federal law," without specifying to whom the report must be made. Franklin, 2011 U.S. Dist. LEXIS 102231, 2011 WL 4024638, at *9 (quoting Merrill v. M.I.T.C.H. Charter School Tigard, 2011 U.S. Dist. LEXIS 36497, 2011 WL 1457461, at *8 (D. Or. Apr. 4, 2011)). Viewing this evidence in the light most favorable to his case, plaintiff establishes that he was engaged in a protected activity for purposes of summary judgment.

b. Adverse Employment Action

Defendants concede for purposes of summary judgment that plaintiff's termination constitutes an adverse employment action. Defs.' Mem. at 9.

c. Causal Link

To establish causal link between his protected activity and his termination, plaintiff must show that his protected activity was one of the reasons for his termination and, but for the complaints, he would not have been terminated. See Ruggles, 797 F.2d at 785 (citing Kauffman v. Sidereal Corp., 695 F.2d 343, 345 (9th Cir. 1982)).

Defendants point out that plaintiff alleges only one act of retaliation, his termination, and only one retaliator, Wickstrom. Defendants thus argue that plaintiff cannot rely on temporal proximity to show a causal relation, because his [*14] last complaint to Wickstrom was two years before his termination. Defendants further argue that plaintiff is unable to show a "pattern of antagonism" following the alleged protected activity to support a causal link. See Guerrero v. State of Hawaii, 662 F. Supp. 2d 1242 (D. Haw. 2009). To bolster this argument, defendants emphasize the positive and improving performance evaluations plaintiff received in 2009 and 2010.

As to temporal proximity, plaintiff identifies six "key events" at Betaseed that occurred in close temporal proximity to his termination: 1) new corporate strategy to plant less seed and use up existing stocks; 2) increased emphasis on saving money and increased profits; 3) lowest acreage of crop planted in 25 years; 4) a complaint by plaintiff to Jay Miller regarding the preceding events; 5) a suggestion by plaintiff to Ofelia Wegley that she open an investigation into wrongdoing at the top of the company; and 6) Wegley's internal investigation, which resulted in no disciplinary action against plaintiff. Pl.'s Mem. at 12. Plaintiff argues that these events, occurring in the weeks immediately prior to his termination, support an inference that he was terminated for again [*15] speaking out about Betaseed's substitution and labeling practices, which he perceived to be on the rise. Id.

Defendants concede that plaintiff's key events occurred in close temporal proximity to plaintiff's termination, but assert that such evidence "falls far short of creating an issue of fact as to causation." Defs.' Reply Mem. at 3. Defendants argue that plaintiff must present more than "a self-serving statement to create a genuine issue of material fact." Manatt v. Bank of America, 339 F.3d 792, 801 (9th Cir. 2003) ("Because Manatt failed to introduce any direct or specific and substantial circumstantial evidence of pretext, summary judgment must be affirmed.").

However, defendants' argument does not address plaintiff's assertion that he continued to speak out regarding Betaseed's labeling practices, including alleged conversations with Jay Miller, John Enright, Mark Schmidt, Heather Nunn, Art Quinn, Steve Libsack, Joe Dahmer, and various

unspecified subordinates. See Peters Decl. ¶ 9. Plaintiff also stated in his deposition that he continued to complain about Betaseed's labeling practices to fellow employees, including Jay Miller, complaints that arguably could have been discovered [*16] by or voiced directly to Wickstrom. See Peters Dep. 78:13-25; 79:1-16. Various other deposition statements suggest that Wickstrom was at least likely to have been present at meetings in which plaintiff complained about the labeling practice. See, e.g., Nunn Dep. 15:1-7 (Wickstrom was "certainly" present in meetings at times); Schmidt Dep. 21:7-20 (meetings would "involve Tangent and others"); Wickstrom Dep. 28:9-25 (implying that plaintiff voiced objections during meetings in which Wickstrom was involved). Whether Wickstrom was aware of those complaints, and if so, whether they played any role in Wickstrom's decision to terminate plaintiff are factual determinations for the jury.

For purposes of summary judgment, plaintiff has presented sufficient evidence that-when considered as a whole-raises questions of fact regarding causation. Therefore, I find that plaintiff has made a prima facie case of retaliation for purposes of summary judgment, and turn now to the second step of the *McDonnell Douglas* analysis.

2. Defendants' Legitimate, Non-Discriminatory Reason and Pretext

Defendants contend that, even if plaintiff is able to make his prima facie case of retaliation, his claim must fail [*17] because he cannot demonstrate that Betaseed's purported legitimate and nondiscriminatory reason for his termination was pretextual.

Defendants rely on plaintiff's purported problems as an employee and manager to counter his prima facie claim of retaliation. Specifically, defendants contend that plaintiff's termination resulted from emails discovered by Wickstrom in the wake of the time-card investigation involving plaintiff and Ibarra. According to Wickstrom's declaration, plaintiff exhibited certain performance problems at work, including his leadership ability, general management style, attitude, and refusal to follow direction. Wickstrom apparently felt that these traits presented management concerns too large to overcome, leaving termination as the only option. While defendants assert a legitimate, non-discriminatory reason, it is based solely on Wickstrom's version of events and his subjective interpretation of plaintiff's emails. Whether Wickstrom's version and interpretation are credible is a question for a jury, not this court. See, e.g., *Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1034 (9th Cir. 2006)*.

Moreover, plaintiff received positive and favorable evaluations [*18] in March of 2009 and 2010. Plaintiff was terminated in May of 2011. Wickstrom Decl. ¶ 7. The record does not reflect that any performance evaluation was completed in 2011, yet Wickstrom claimed that plaintiff was terminated for his poor performance as a manager. Id. The Ninth Circuit has stated that unwarranted reductions in performance scores can constitute evidence of pretext. See *Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1284 (9th Cir. 2001)* (citing *Yartzoff v. Thomas, 809 F.2d 1371, 1377 (9th Cir. 1998))*. In Yartzoff, the plaintiff produced evidence of average and above average performance ratings over a period of years prior to his complaints, followed by sub-average ratings for the first time in his tenure afterwards. *Yartzoff, 809 F.2d at 1377*. The court explicitly stated that, although defendant had affidavits in support of their action, a fact-finder should be allowed to weigh such evidence. Id.

The facts here are sufficiently analogous. Both parties agree that plaintiff received positive performance reviews in 2009, which improved in 2010, and Wickstrom appears to have participated in the preparation of these evaluations. See Defs.' Mem. at 7. Yet, in [*19] 2011, with no objective evaluation or other indication in the record that plaintiff's outward performance had changed, Wickstrom determined that plaintiff presented "insurmountable concerns that precluded any

solution beyond his termination." Defs.' Mem. at 4. Whether this precipitous fall in plaintiff's alleged performance, severe enough to warrant immediate termination, was legitimate or pretextual is also a determination for a fact-finder. While defendant's rationale could certainly be non-discriminatory, it is not so clearly legitimate as to support a grant of summary judgment. Plaintiff's declaration and deposition testimony, as well as his apparently positive history as an employee, is sufficient evidence to warrant factual consideration by a jury.

Accordingly, summary judgment in favor of defendants as to plaintiff's claim of retaliation under Or. Rev. Stat. § 659A.199 is denied.

B. Plaintiff's Aiding and Abetting Claim Against Wickstom

Defendants also assert that plaintiff's second claim against Wickstrom under Or. Rev. Stat. § 659A.030(1)(g), for aiding and abetting Betaseed in retaliating against plaintiff, must fail for two reasons.

First, defendants state that the aiding and [*20] abetting claim against Wickstrom must fail if the retaliation claim against Betaseed fails. While true as a matter of law, plaintiff has adduced sufficient evidence to defeat summary judgment with respect to his claim of retaliation under Or. Rev. Stat. § 659A.199, and this argument therefore fails.

Second, defendants contend that because Wickstrom's employment action on behalf of Betaseed is the sole alleged retaliatory action against plaintiff, he is the primary actor in the alleged retaliation and therefore cannot be liable for aiding and abetting. See Demont v. Starbucks Corp., 2010 U.S. Dist. LEXIS 132987, 2010 WL 5173304 (D. Or. Dec. 15, 2010); Gaither v. John Q. Hammons Hotels Mgmt., 2009 U.S. Dist. LEXIS 130491 (D. Or. Sept. 3, 2009); see also Sniadoski v. Unimart of Portland, 1993 U.S. Dist. LEXIS 21165, 1993 WL 797438, *2 (D. Or. Oct. 29, 1993)

(finding that individual liability under § 659A.030 made "little sense" in light of the equitable remedies then available under the statute). However, plaintiff argues that this court has found that the 2007 amendments to Or. Rev. Stat. § 659A.885(3) recognized claims against individuals such as employees, as compensatory and punitive damages were added as remedies. Chambers v. United Rentals, Inc., 2010 U.S. Dist. LEXIS 69291, 2010 WL 2730944, at *2 (D. Or. Jul. 7, 2010). [*21] While plaintiff is correct, Chambers is only relevant insofar as it establishes that individual employees may be held liable for aiding and abetting an illegal act; it does not discuss whether an individual who takes employment action on behalf of a company can be held liable in aiding and abetting the company in an unlawful act.

Plaintiff argues that Wickstrom's argument fails to account for the fact that he exercised his executive authority over Betaseed and "compelled the wrongful termination" of plaintiff by Betaseed, thus aiding and abetting in Betaseed's retaliation. Plaintiff cites Gaither in support, noting that the court found the plaintiff's former manager to be liable for aiding and abetting plaintiff's former employer in unlawful discrimination. Gaither, 2009 U.S. Dist. LEXIS 130491, at *8-9.

Yet the facts of this case differ from those of Gaither in one important respect: here, Wickstrom was both plaintiff's manager and the executive authority of Betaseed, whereas in Gaither the manager and employer were separate and distinct. To apply Gaither under the present facts would be to suggest that it is possible to aid and abet oneself. Because Wickstrom took action to terminate [*22] the plaintiff within his role as president of Betaseed, I find that plaintiff's claim against Wickstrom for aiding and abetting under § 659A.030(1)(g) makes little sense under the plain meaning of the statute. Accordingly, summary judgment is granted in favor of defendants as to plaintiff's claim for aiding and abetting under Or. Rev. Stat. § 659A.030(1)(g).

**CONCLUSION**

For the forgoing reasons, defendants' motion for summary judgment (doc. 24) is DENIED with respect to plaintiff's claim against Betaseed for retaliation under *Or. Rev. Stat § 659A.199*, and GRANTED with respect to plaintiff's claim against Kurt Wickstrom for aiding and abetting under *Or. Rev. Stat. § 659A.030(1)(g)*. Plaintiff's motion to strike (doc. 38) is DENIED as moot.

IT IS SO ORDERED.

Dated this 9th day of November, 2012.

/s/ Ann Aiken

Ann Aiken

United States District Judge

**End of Document**