IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JUSTIN J. BAKER;

        Plaintiff,

v.

MARICLE INDUSTRIES, INC., dba
SERVICEMASTER CLEANING
SPECIALISTS, and SCOTT N. MARICLE,

        Defendants.

Case No. 6:16-cv-01793-AA
OPINION AND ORDER

AIKEN, Judge:

## INTRODUCTION

In this action, plaintiff Justin Baker asserts that his former employer, defendant ServiceMaster Cleaning Specialists, violated the Americans with Disabilities Act and Oregon employment discrimination statutes by unlawfully terminating plaintiff. Plaintiff also seeks to hold ServiceMaster Cleaning Specialists and its corporate president, defendant Scott Maricle, liable under Or. Rev. Stat. § 659A.030(1)(f) for firing plaintiff on the basis that plaintiff opposed unlawful employment practices and Or. Rev. Stat. § 659A.030(1)(g) for aiding and abetting an

PAGE 1– OPINION AND ORDER

unlawful employment practice. Mr. Maricle[1] moves for partial summary judgment on three grounds: 1) plaintiff failed to exhaust administrative remedies because his amended complaint with Bureau of Labor and Industries (BOLI) naming Mr. Maricle as a respondent is void; 2) plaintiff fails to state a claim that Mr. Maricle aided and abetted ServiceMaster Cleaning Specialists as a matter of law; and 3) plaintiff's claim that Mr. Maricle violated Or. Rev. Stat. § 659A.030(1)(f) is deficient as a matter of law since that provision does not apply to individual employees. For the reasons set out below, the Court DENIES defendant's amended motion for summary judgment (doc. 22).

## BACKGROUND

Plaintiff was a reservist with the United States Air Force and served in Afghanistan before he started working for ServiceMaster Cleaning Specialists as a water technician on August 12, 2013. Ross Decl. Ex. 1 at 19 Jan. 13, 2017; Pl.'s Resp. Br. to Def.'s Mot. Summ. J. 2 (doc. 18). Plaintiff received a diagnosis of post-traumatic stress disorder (PTSD) after his discharge from the Air Force. Ross Decl. Ex. 1 at 151 Jan. 13, 2017.

On October 24, 2014, plaintiff claims he overheard a conversation between Mr. Maricle and plaintiff's project manager, Andrew McCabe, where Mr. Maricle made offensive remarks regarding plaintiff's PTSD. *Id.* In that conversation, Mr. Maricle allegedly said plaintiff "needs to get over his bullshit" in reference to plaintiff's PTSD. *Id.* at 15. Shortly thereafter, Mr. Maricle and Mr. McCabe called plaintiff into a meeting. *Id.* at 14. Although the parties dispute whether ServiceMaster Cleaning Specialists terminated plaintiff or plaintiff voluntarily left his

---

[1] The motion for summary judgment concerns only the claims against Mr. Maricle individually and ServiceMaster Cleaning Specialists did not join in that motion. Throughout this opinion, therefore, the singular "defendant" refers to Mr. Maricle only.

PAGE 2 – OPINION AND ORDER

employment, October 24, 2014, was plaintiff's last day with ServiceMaster Cleaning Specialists. *Id.* at 77–78 & 151.

Plaintiff alleges Mr. Maricle continued making disparaging remarks even after the termination of plaintiff's employment. *Id.* at 152. Ultimately, plaintiff credits discrimination on the basis of his perceived and actual disability and retaliation for initiating a complaint of a hostile work environment as the reasons for his termination. *Id.*

## STANDARD

Summary judgment is appropriate when the evidence shows "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment must first identify the parts of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009) (quotation marks omitted). Should the moving party meet this initial burden, "the burden shifts to the non-moving party to set forth . . . specific facts showing that there is a genuine issue for trial." *Id.* at 928. On a motion for summary judgment, a court views "the evidence in a light most favorable to the non-moving party[.]" *Id.* at 927. Plaintiff's claim will survive summary judgment if there is "evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**DISCUSSION**

I.    *Plaintiff's Amended BOLI Complaint*

Plaintiff may pursue in this lawsuit only those claims adequately raised in his complaint with BOLI.[2] Defendant seeks to dismiss Mr. Maricle from this case on the basis that 1) plaintiff failed to abide by the one year statute of limitation to initiate a complaint against Mr. Maricle, so plaintiff's claim is time-barred; 2) plaintiff should have filed a new BOLI complaint rather than amend his existing complaint when he added statutory references that could hold Mr. Maricle liable as a respondent; and 3) plaintiff failed to comply with Or. Rev. Stat. § 659A.820(2) by submitting an undated and unsigned amendment. Plaintiff responds by arguing defendant's assertions find no support in the law.

First, defendant argues that plaintiff did not name Mr. Maricle as a respondent in his initial complaint, and that the amended complaint naming Mr. Maricle cannot stand as a matter of law because the one-year statute of limitations expired on October 24, 2015. Contrary to defendant's assertion, plaintiff's initial BOLI complaint identified both ServiceMaster Cleaning Specialists and Mr. Maricle as respondents. Ross Decl. Ex. 1 at 154 Jan. 13, 2017. The cover letter enclosed with plaintiff's BOLI complaint also identified Mr. Maricle as a respondent. *Id.* at 153. Even if plaintiff had not listed Mr. Maricle as a respondent, Or. Rev. Stat. § 659A.820's

---

[2] Any discrimination claim related to plaintiff's termination that was not raised in the BOLI complaint would be time-barred. Oregon law gives employment discrimination plaintiffs one year to either file a lawsuit or file a complaint with BOLI. Or. Rev. Stat. § 659A.875(1); *id.* § 659A.820(2); Or. Admin. R. 839-0003-0025(6). If a plaintiff chooses to file a complaint with BOLI, any civil action related to that complaint must be filed within ninety days after BOLI issues a right-to-sue letter. Or. Rev. Stat. § 659A.875(2). It is undisputed that plaintiff initially filed his complaint with BOLI within the one-year statute of limitations and that plaintiff filed this action within ninety days of receiving the right-to-sue letter. It is also undisputed that the one-year statute of limitations has now expired, so the only timely claims are those first raised in the BOLI complaint.

PAGE 4 – OPINION AND ORDER

one-year deadline would not bar BOLI from identifying, through its investigation, "additional persons" who "should be named as respondents in the complaint[.]"    Or. Rev. Stat. § 659A.835(3).  Here, plaintiff amended his complaint on April 7, 2016, before BOLI concluded its investigation on June 10, 2016.  Ross Decl. Ex. 1 at 6 Jan. 13, 2017.

Second, defendant suggests that because plaintiff's claims against Mr. Maricle arise under statutes not cited in the initial BOLI complaint, plaintiff was required to file a new complaint rather than amend his old one.  To the contrary, BOLI does not require plaintiffs to identify statutes that give rise to their complaints.  *See* Or. Rev. Stat. § 659A.820.  Furthermore, plaintiff is not trying to allege new facts through his amendment.  *Cf.* Or. Admin. R. 839-003-0040(3) ("If new facts are alleged, the aggrieved person must file a new complaint meeting the standards provided in Or. Admin. R. 839-003-0005(5).").  Plaintiff's amendment merely clarifies his intent to pursue claims against both defendants by adding statutory references to Or. Rev. Stat. § 659A.030(1)(f) and Or. Rev. Stat. § 659A.030(1)(g).  *See* Ross Decl. Ex. 1 at 41 Jan. 13, 2017.

Finally, defendant argues that because plaintiff submitted an undated and unsigned copy of his amendment to BOLI, plaintiff's amendment was deficient as a matter of law.  BOLI's administrative rules, however, contradict defendant's assertion.  Or. Admin. R. 839-003-0040(4) provides that "[a]mended complaints need not be verified or signed by the aggrieved person."  Moreover, because BOLI's administrative rules are silent as to whether plaintiff must date his amendment and BOLI accepted the amendment over defendant's objections, the Court cannot find plaintiff's amendment deficient.  *See DeLeon, Inc. v. Dep't of Human Servs.*, 188 P.3d 354, 357 (Or. Ct. App. 2008) (holding deference is warranted to a state "agency's plausible

PAGE 5 – OPINION AND ORDER

interpretation of its own rule, including an interpretation made in the course of applying the rule, if that interpretation is not inconsistent with the wording of the rule, its context, or any other source of law"). Therefore, the Court concludes plaintiff's claims against Mr. Maricle are timely because they were adequately raised in the BOLI complaint.

II.    *Aiding and Abetting*

In Oregon, it is unlawful "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter[.]" Or. Rev. Stat. § 659A.030(1)(g). Defendant seeks to dismiss plaintiff's aiding and abetting claim against Mr. Maricle because Mr. Maricle was allegedly the principal actor in perpetuating the allegedly unlawful employment practices and not merely an assistant. In support of his motion, defendant cites a string of unpublished cases from this Court, including *Peters v. Betaseed, Inc.*, 2012 WL 5503617, *7 (D. Or. Nov. 9, 2012), which recognizes the principle that a defendant cannot aid and abet herself. *See also White v. Amedisys Holding, LLC*, 2012 WL 7037317, *4 (D. Or. Dec. 18, 2012) (explaining courts treat agents acting with executive authority differently because they act directly on behalf of the corporate employer, whereas supervisory managers do not).

In *Peters*, the plaintiff alleged his former employer engaged in illegal whistleblower retaliation. 2012 WL 5503617, at *1–*2. The plaintiff also alleged defendant's corporate president was jointly liable under Or. Rev. Stat. § 659A.030(1)(g) for aiding and abetting because the president made to decision to fire the plaintiff. *Id.* The Court dismissed the president from the case because plaintiff failed to explain how the corporate president stood as a third party in the relationship between plaintiff and the corporation. *Id.* at *7. The Court

PAGE 6 – OPINION AND ORDER

explained that the corporate president exercised "executive authority . . . within his role as president." *Id.* Because plaintiff came forward with no facts suggesting the president acted in his personal capacity, the Court wrote that holding the corporate president liable "would be to suggest that it is possible to aid and abet oneself." *Id.*; *see also White*, 2012 WL 7037317 at *3 ("[Y]ou cannot aid and abet yourself[.]") (quoting *Gaither v. John Q. Hammons Hotels Mgmt., LLC*, 2009 WL 9520797, *4 (D. Or. Sept. 3, 2009)), *report and recommendation adopted*, 2013 WL 489674, *1 (D. Or. Feb. 7, 2013); *Gaither*, 2009 WL 9520797, at *4 (D. Or. Sept. 3, 2009) ("[A]lleging . . . liability as a primary actor" raises the concern that a defendant could be held liable for aiding and abetting himself).

In response, plaintiff suggests the District of Oregon's common law does not control a dispute about the application of state law. Moreover, plaintiff argues holding a corporate president liable for aiding and abetting is consistent with the legal fiction that corporations are separate entities from natural persons. As support for this proposition, plaintiff cites BOLI's long history of holding corporate executives liable under Or. Rev. Stat. § 659A.030(1)(g). *See In re Body Imaging, PC*, 17 BOLI 162, 184 (1998) ("The Commissioner has long held that corporate presidents are liable for aiding and abetting their Respondent corporations[.]"); *see also In re Maltby Biocontrol, Inc. dba Biotactics*, 33 BOLI 121, 151 (2014) ("As MBI's corporate president, H. Maltby aided and abetted MBI's violation of Or. Rev. Stat. § 659A.030(1)(b) by failing to take immediate and appropriate corrective action in response" to the unlawful employment practices); *In re N.H. Kneisel, Inc.*, 1 BOLI 28, 38 (1975) (holding

president of offending employer liable for aiding and abetting discriminatory employment practices).[3]

Plaintiff also argues that Mr. Maricle can be liable for aiding and abetting the defendant corporation in the same way that Oregon courts find corporate presidents liable for tortiously interfering with plaintiffs' economic relations with their employers. For example, in *McGanty v. Staudenraus*, 901 P.2d 841, 844–46 (Or. 1995), the Oregon Supreme Court found a corporate president can be a third party to the relationship between an employee and an employer. There, the plaintiff sued the corporate president for intentional interference with economic relations with her employer after subjecting plaintiff to a pattern of sexual harassment and abuse over the course of eighteen months. *Id.* at 843–44. The defendant argued "he cannot be a third party to the contract between plaintiff and [the employer] because, according to the complaint, [defendant] was acting as" in his role as an employer "at all pertinent times." *Id.* at 845. Explaining the "long-established doctrine of *respondeat superior* provides the appropriate guidance," the Oregon Supreme Court wrote:

> So long as an officer or employe[e] acts within the general range of his authority intending to benefit the corporation, the law identifies his actions with the corporation. In such a situation the officer is not liable for interfering with a contract of the corporation any more than the corporation could be liable in tort for interfering with it.

*Id.* at 845–46 (quoting *Wampler v. Palmerton*, 439 P.2d 601, 607 (Or. 1968)). The court explained it would consider corporate presidents as third parties if they acted outside of the scope

---

[3] Defendant writes in that "Plaintiff simply rehashes a series of arguments that have already been rejected by this Court[.]" Defs.' Reply Br. 11 (doc. 20). To the contrary, the Court has not found another instance of a litigant arguing that the legal fiction that corporations are distinct entities from natural persons matters when considering whether a corporate president could be liable under Or. Rev. Stat. § 659A.030(1)(g). This argument illuminates when a corporate president can be a third party to an employment relationship under Oregon law.

PAGE 8 – OPINION AND ORDER

of employment. *Id.* at 846; *accord Sims v. Software Solutions Unlimited, Inc.*, 939 P.2d 654, 658 (Or. Ct. App. 1997) (holding that a corporate president could not have tortiously interfered with plaintiff's economic relations as a matter of law because the corporate president always acted "within the scope of his authority" and therefore "cannot be a 'third party' to the employment relationship").

The Court finds plaintiff's analogy convincing. When a corporate president acts outside her scope of employment, she acts in her personal capacity, not as an agent of the corporation, and is, therefore, a third party to the plaintiff's relationship to the corporation. Under those conditions, the Court could hold Mr. Maricle liable for aiding and abetting ServiceMaster Cleaning Specialists under Or. Rev. Stat. § 659A.030(1)(g). Notably, the result in *McGanty* is distinguishable. There, the plaintiff could not bring a claim under Or. Rev. Stat. § 659A.030(1)(g) because her complaint conceded that the corporate president acted within in his official capacity at all relevant times. *McGanty*, 901 P.2d at 846 ("[A] statement of fact in a party's pleading is an admission that the fact exists as stated.") (quoting *Moore v. Drennan*, 523 P.2d 1250, 1252 (1974)). Here, plaintiff makes no similar concession in his complaint.

If a corporate president's "sole purpose is one that is not for the benefit of the corporation, [she] is not acting within the scope of employment and may be liable" for tortiously interfering with plaintiff's contractual relations. *Boers v. Payline Sys., Inc.*, 918 P.2d 432, 435 (Or. Ct. App. 1996); *see Sims*, 939 P.2d at 658 (explaining employees act within the scope of their employment when they act "at least in part to further the best interests of the employer"); *cf. Porter v. OBA, Inc.*, 42 P.3d 931, 936 (Or. Ct. App. 2002) (stating, with respect to a claim for intentional interference with economic relations, that a plaintiff must come forward with

PAGE 9 – OPINION AND ORDER

evidence from which "a trier of fact reasonably could infer from the evidence to which plaintiff points that [defendant] fired plaintiff solely for a personal reason" rather than for the benefit of the company). In determining whether an employee's conduct is within or outside her scope of employment, relevant factors include "whether the act occurred substantially within the time and space limits authorized by the employment [and] whether the act is of a kind which the employee was hired to perform." *Boers*, 918 P.2d at 435 (quoting *McGanty*, 901 P.2d at 846 n.3). Finally, whether Mr. Maricle acted outside his scope of employment is not a question of law but of fact. *McGanty*, 901 P.2d at 846 n.3 ("whether a party has acted within the scope of employment is a question of fact, albeit an ultimate fact.").

Because defendant did not argue that plaintiff is unable to show that Mr. Maricle acted outside the scope of his authority, defendant has not "demonstrate[d] the absence of a genuine issue of material fact" and failed to meet the burden on a motion for summary judgment. *Stefanchik*, 559 F.3d at 927 (quotation marks omitted). Moreover, since the parties have not engaged in discovery, the Court has no basis on which to grant defendant's motion at this time. *Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment[] *after* adequate time for discovery and upon motion[.]") (emphasis added); *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981) (explaining that "opportunity to respond" courts must afford non-movants must include "sufficient time be afforded for discovery necessary to develop facts essential to justify (a party's) opposition to the motion") (quotation marks omitted).

III.     Or. Rev. Stat. § 659A.030(1)(f)

Defendant moves for summary judgment on plaintiff's claim that Mr. Maricle is personally liable under Or. Rev. Stat. § 659A.030(1)(f) for retaliating against plaintiff for opposing unlawful employment practices on the basis that the statute does not make individual employees liable.   Or. Rev. Stat. § 659A.030(1)(f) provides it is an unlawful employment practice "[f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

To support his argument that Or. Rev. Stat. § 659A.030(1)(f) does not apply to employees, defendant relies almost exclusively on legislative history.   Plaintiff responds that Or. Rev. Stat. § 659A.030(1)(f), by its plain terms, applies to "any person" that opposes plaintiff's lawful employment practice.

Oregon courts employ a three-step methodology for statutory interpretation.   *State v. Gaines*, 206 P.3d 1042, 1050 (Or. 2009).   First, courts consider the "text and context" for the statute, *id.*, following the rule that "words of common usage typically should be given their plain, natural, and ordinary meaning," *Portland Gen. Elec. Co. v. Bureau of Labor & Indus.*, 859 P.2d 1143, 1146 (Or. 1993), *superseded by statute on other grounds as explained in Gaines*, 206 P.3d at 1048.   Second, courts should consider evidence of legislative history, even in the absence of "ambiguity in the statute's text," but the weight allocated to such legislative history is firmly ensconced in the courts' discretion.   *Gaines*, 206 P.3d at 1050–51; *see* Or. Rev. Stat. § 174.020(3).   Finally, "[i]f the legislature's intent remains unclear after examining text, context,

PAGE 11 – OPINION AND ORDER

and legislative history, the court[s] may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Gaines*, 206 P.3d at 1051. A "party seeking to overcome seemingly plain and unambiguous text with legislative history has a difficult task before it" because courts "will not lightly disregard [their] understanding of the statute based on the common and natural meaning of its text and context." *Id.* at 1051 & 1054; *see Portland Gen. Elec. Co.*, 859 P.2d at 1146 ("[T]he text of the statutory provision itself . . . is the best evidence of the legislature's intent."). Defendant must come forward with "highly probative and persuasive legislature history" in order to convince an Oregon court that legislative history controls the otherwise plain meaning of the statute. *Gaines*, 206 P.3d at 1054.

Despite the plain language of Or. Rev. Stat. § 659A.030(1)(f), defendant urges the Court to preclude plaintiff from holding Mr. Maricle personally liable by interpreting "any person" to mean "employers." Before the legislature amended Or. Rev. Stat. § 659A.030(1)(f) to hold "any person" liable for retaliation, the statute only permitted plaintiff to hold "employer[s], labor organization[s], [and] employment agenc[ies]" liable. 2001 Or. Laws Ch. 621 (2001). Defendant argues that House Bill 2352, which substituted "any person" for that more specific list in Or. Rev. Stat. § 659A.030(1)(f), was not intended to make any substantive changes in the law, but merely reorganize pre-existing statutes. Specifically, defendant points to testimony from the Bureau of Labor and Industries' Legal Policy Advisor, who suggested "no substantive rights were taken away or added, as far as we know" and testimony from the bill drafter, who said proponents were "extremely sensitiv[e]" about making substantive changes. *See* Def.'s Repl. Br. Ex. 1 at 9–10 (doc. 20) (quoting testimony from the House Judiciary Civil Law Subcommittee's hearings on House Bill 2352). As such, because Mr. Maricle is not an employer, labor

PAGE 12 – OPINION AND ORDER

organization, or employment agency, defendant argues plaintiff cannot sue Mr. Maricle individually under Or. Rev. Stat. § 659A.030(1)(f).

Initially, the Court notes two ways in which the legislative history of House Bill 2352 is not as clear as defendant's well-curated evidence suggests. First, the bill's proponents repeatedly emphasized that they could not guarantee that House Bill 2352 made no substantive changes. Hearing on H.B. 2352 Before H. Comm. on Judiciary Civil Law Subcommittee, 2001 Leg., 71st Session (Or. 2001) (statements of Marcia Ohlemiller, Legal Policy Advisor for the Bureau of Labor and Industries and Dave Heynderickx, Senior Deputy for Legislative Counsel). Second, there is also evidence from the legislative history that House Bill 2352 was intended to make Oregon's employment and civil rights statutes accessible to a layperson. Def.'s Repl. Br. Ex. 1 at 10 (quoting Jeff Carter of the Oregon Law Commission, which drafted House Bill 2352, and relaying that "[o]ne of the primary goals was to put together . . . a more user friendly chapter that didn't necessarily require the assistance of a lawyer"). That stated purpose conflicts with the technical reading defendant offers because it is unclear how the layperson would have the decoder ring necessary to interpret "any person" to mean "employers." In light of this conflicting legislative history, the Court is not convinced defendant presented "highly probative" evidence to support such a crabbed reading of an otherwise plainly worded statute. *Gaines*, 206 P.3d at 1054; *see State ex rel Cox v. Wilson*, 562 P.2d 172, 173 (Or. 1977) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes.").

*Portland State Univ. Chapter of Am. Ass'n of Univ. Professors v. Portland State Univ.*, 291 P.3d 658, 666 (Or. 2012), provides some evidence of how the Oregon Supreme Court would

PAGE 13 – OPINION AND ORDER

resolve this conflicting legislative history. The Court compared the text of subsection 1(a) and (e), which only apply to employers, with the text of subsection (1)(f), and found "a notable difference." The Oregon Supreme Court explained that while subsections 1(a) and (e) "directly prohibit . . . an employer from creating an invidious classification," Or. Rev. Stat. § 659A.030(1)(f) serves a broader purpose by protecting "the enforcement mechanisms that the legislature has afforded throughout ORS chapter 659A." *Portland State Univ. Chapter of Am. Ass'n of Univ. Professors*, 291 P.3d at 666. The court continued:

> [W]e understand subsection (1)(f) to assist the protective purposes of ORS chapter 659A by ensuring that any person who is engaged in protected conduct, such as opposing discriminatory practices or seeking redress in an agency or court, is not discouraged from doing so by the threat of being subjected to adverse, disparate treatment.
>
> . . .
>
> If employers, *or any person for that matter*, could impose adverse, disparate treatment against employees engaged in such activities, then the curative measures contained in ORS Chapter 659A would be thwarted.

*Id.* at 666–67 (emphases added). That is evidence that the Oregon Supreme Court would resolve any doubt in favor of broader remedies for employees.

The Court also does not find any binding or persuasive precedent limiting the application of Or. Rev. Stat. § 659A.030(1)(f) to employers, labor organizations, or employment agencies. *Medina v. State*, 377 P.3d 626, 631 (Or. Ct. App. 2016) (reversing defendants' grant of summary judgment where plaintiff sued his former supervisor individually for violating Or. Rev. Stat. § 659A.030(1)(f)); *Lacasse v. Owen*, 373 P.3d 1178, 1186 (Or. Ct. App. 2016) (same); *Demont v. Starbucks Corp.*, 2010 WL 5173314, *8 (D. Or. Aug. 26, 2010), *report and recommendation adopted in relevant part*, 2010 WL 5173304 (D. Or. Dec. 15, 2010). Because the Oregon

PAGE 14 – OPINION AND ORDER

Supreme Court has not precisely "decided the question presented," the Court predicts that Oregon courts would continue to apply Or. Rev. Stat. § 659A.030(1)(f) to hold individual employees liable. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). To do otherwise would impermissibly "speculat[e] as to future changes in the law." *Id.* Therefore, the Court finds that Or. Rev. Stat. § 659A.030(1)(f) applies to individual employees just as it applies to employers.

## CONCLUSION

The Court DENIES defendant's amended motion for summary judgment (doc. 22).

IT IS SO ORDERED.

Dated this 17th day of March 2017.

Ann Aiken
United States District Judge

PAGE 15 – OPINION AND ORDER